IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| RAYMOND REED HUSMAN, | : | Case No. 12-23529-CMB |
| | : | |
| Debtor. | : | Chapter 7 |
| | : | |
| KAREN HASSINGER, | : | Adversary No. 12-2462-CMB |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| RAYMOND REED HUSMAN, | : | |
| | : | |
| Defendant. | : | |

*Appearances:*  Charles O. Zebley, Jr., Esq., for the Debtor, Raymond Reed Husman
Karen Hassinger, Esq., Plaintiff, *Pro Se*

## MEMORANDUM OPINION

The matter before the Court is the Objection to Discharge filed by Karen Hassinger, Esq. seeking a determination of nondischargeability of a debt pursuant to 11 U.S.C. §523. Plaintiff contends that Debtor fraudulently obtained services from Plaintiff valued at $11,443.22. For the reasons stated herein, this Court finds that a portion of the debt owed to Plaintiff is nondischargeable pursuant to §523(a)(2)(A). [1]

---

[1] This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This is a core matter pursuant to 28 U.S.C. §157(b)(2)(I), and the Court will enter final judgment. However, if the United States District Court determines pursuant to the rationale set forth in *Stern v. Marshall*, 131 S.Ct. 2593 (2011), that this Court does not have the authority to enter final judgment, then the Memorandum Opinion and Order entered shall constitute the Court's proposed findings of fact and conclusions of law and recommendation to the District Court.

## FINDINGS OF FACT

Debtor, Raymond Reed Husman, retained Plaintiff, Karen Hassinger, Esq., to represent Debtor in various court proceedings beginning in April 2011. Debtor quickly exhausted the $500.00 retainer paid to Plaintiff at the outset of Plaintiff's representation and by April 12, 2012, accumulated an outstanding balance with Plaintiff of $10,693.22. Due to the large amount owed, on the Statement issued to Debtor dated April 12, 2012[2], Plaintiff informed Debtor that if a payment of $5,000.00 was not made by May 25, 2012, Plaintiff would withdraw her representation of Debtor prior to Debtor's hearing scheduled for June 26, 2012. Having not received the requested payment, on June 12, 2012, Plaintiff sent a letter to Debtor stating that Plaintiff intended to present a motion to withdraw on June 25, 2012 unless the previously requested $5,000.00 payment was made by 4:00 p.m. on June 19, 2012.[3]

On June 19, 2012, Debtor contacted Plaintiff's office and spoke with Plaintiff's employee, Julie Yusko. At trial, Ms. Yusko credibly testified that Debtor told Ms. Yusko that he had inherited property in the state of Oklahoma ("Oklahoma Property") from his cousin, Robin Husman, for which a closing was going to take place very soon and that Plaintiff would be paid from the proceeds of the sale. Ms. Yusko immediately communicated Debtor's representations to Plaintiff and Plaintiff agreed to continue representation of Debtor on the condition that Debtor execute a judgment note and provide Plaintiff with the name and address of the agent handling the closing of the property. On June 21, 2012, Debtor executed a judgment note ("Judgment Note") in favor of Plaintiff in the amount of $11,443.22[4]. Within a couple days of executing the Judgment Note, Debtor faxed to Plaintiff the name and contact information of the title company

---

[2] The April 12, 2012 Statement was admitted at trial as part of Exhibit "A".
[3] The June 12, 2012 letter was admitted at trial as Exhibit "C".
[4] The total amount of the Judgment Note, $11,443.22, included the Debtor's outstanding balance as of the date of the Judgment Note, $10,693.22, plus an additional $750.00 for Plaintiff's anticipated preparation for, and appearance at, Debtor's June 26, 2012 hearing.

conducting the closing.  Upon receipt of the information, Ms. Yusko contacted the title company and spoke with a representative, Sam Kruszynski, who confirmed that she was familiar with Debtor. Ms. Yusko then faxed a copy of the Judgment Note to the title company.

At trial, Plaintiff credibly testified that in accounting for his recent acquisition of property, Debtor told Plaintiff that Robin Husman had willed the property in question to Debtor due to the fact that Debtor had loaned Ms. Husman money for the down payment.  Debtor further explained that he had not previously revealed his ownership interest in the property to Plaintiff because Ms. Husman's ex-husband had contested the will, but litigation had since ended and, as Debtor was determined to be the rightful beneficiary, the property was now deeded in Debtor's name.  Plaintiff testified that based on Debtor's representations, Plaintiff appeared for Debtor at the June 26, 2012 hearing for which she charged Debtor an additional $750.00.

Plaintiff further credibly testified that immediately prior to the hearing, Debtor informed Plaintiff that the closing on the property would be delayed from June 30, 2012 to July 2, 2012. On July 2, 2012, Plaintiff contacted the title company which confirmed receipt of the Judgment Note but informed Plaintiff that there was no closing.  The title company explained to Plaintiff that Debtor had contacted the title company, but failed to provide the title company with the required documents.  Plaintiff instructed Ms. Yusko to perform a search of property and estate records in Oklahoma.  Ms. Yusko's search revealed that although a Robin Husman had died in Millerton, Oklahoma, there was no evidence of any property being left to Debtor.  Plaintiff contacted Debtor about the sale. Debtor maintained that although the current buyer could not obtain financing, Debtor still expected to sell the property.  Plaintiff then confronted Debtor with the findings of Ms. Yusko's property and records search.  In response, Debtor stated that he

needed to "clear his head" and would get back to Plaintiff. Shortly thereafter, Defendant filed for bankruptcy on July 12, 2012.

At trial, counsel for Debtor stated on the record that Debtor did not contest Plaintiff's testimony. Further, Debtor did not testify at trial or offer any witnesses.

## APPLICABLE STANDARDS

The underlying intent of the Bankruptcy Code is to afford honest but unfortunate debtors "relief 'from the weight of oppressive indebtedness and provide them with a fresh start.'" *Gaussa v. Crawford (In re Crawford),* 476 B.R. 890, 894 (Bankr.W.D.Pa.2012)(quoting *Insurance Co. of N. Am. v. Cohn (In re Cohn),* 54 F.3d 1108, 1113 (3d Cir.1995)). In light of this intent, exceptions to discharge are strictly construed against the creditor and liberally in favor of the debtor. *Id.* However, discharge is not guaranteed as the "honest but unfortunate" requirement seeks to ensure that a "deceitful debtor does not benefit from his or her own fraud." *In re Crawford,* 476 B.R. at 894 (quoting *Corso v. Walker (In re Walker)*, 439 B.R. 854, 859 (Bankr.W.D.Pa.2010)(citations omitted)). In actions brought under §523, the creditor bears the burden of proof by the preponderance of the evidence. *In re Crawford,* 476 B.R. at 895 (citing *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

In Plaintiff's complaint objecting to discharge, Plaintiff avers that due to Debtor's "false assertions and fraudulent claims" made regarding ownership of the Oklahoma Property, Debtor's indebtedness to Plaintiff should not be discharged on the basis of fraud and false representations in accordance with §523. At trial and in additional pleadings, Plaintiff narrowed her causes of action as arising under §523(a)(2)(A) and (B).

§523(a)(2)(A)

11 U.S.C. §523(a)(2)(A) denies a discharge of a debt incurred "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

In order to succeed on a claim of false representation under §523(a)(2)(A), Plaintiff must establish the following five elements: "(1) Debtor made a representation [to Plaintiff]; (2) at the time of the representation, Debtor knew it to be false; (3) Debtor made the representation with the intent and purpose of deceiving Plaintiff; (4) Plaintiff relied upon the false representation; and (5) Plaintiff suffered a loss as a proximate result of the representation." *Sales v. Hawkins (In re Hawkins)*, 463 B.R. 768, 772-73 (Bankr.W.D.Pa.2012)(citing *In re Barnette,* 281 B.R. 869, 874 (Bankr.W.D.Pa.2002)). However, satisfaction of these elements alone is insufficient to deny a discharge under §523(a)(2)(A).

In addition to satisfying the five elements above, in order for a debt to be declared nondischargeable under §523(a)(2)(A) a plaintiff-creditor must establish that the relevant debt was obtained by the debtor's fraudulent conduct. *See Lyon Financial Services v. Dutt (In re Dutt)*, BR 09-29477-CMB, 2013 WL 425856, at *1 (Bankr.W.D.Pa. Feb. 1, 2013)(citing *Jones v. Dressler (In re Dressler)*, 431 B.R. 127, 131 (Bankr.W.D.Pa.2010); *Telmark v. Booher (In re Booher),* 284 B.R. 191, 200 (Bankr.W.D. Pa.2002). Further, the creditor must also show that the offending false representation does not qualify as a statement respecting the debtor's or an insider's financial condition. *See* 11 U.S.C. §523(a)(2)(A).

As a general rule, a creditor cannot show that a debtor obtained consideration from the creditor by virtue of a relied upon false representation if the debtor obtained the consideration prior to having made the false representation in question. *In re Booher*, 284 B.R. at 201 (citing 4 Collier on Bankruptcy, "¶ 523.08[1][d] at 523–43 ('If the [money,] property [,] services[, etc.] w[as] obtained before the making of any false representation, subsequent misrepresentations[—that is, misrepresentations made subsequent to the obtaining of said money, property, services, etc.—]will have no effect on dischargeability.)'"). Thus, under §523(a)(2)(A), a creditor must prove that the debtor made the offending false representation prior to acquiring the consideration from the creditor. *In re Booher*, 284 B.R. at 201.

11 U.S.C. §523(a)(2)(A) provides that a denial of discharge under said subsection is unavailable for statements, otherwise actionable under §523(a)(2)(A), that constitute a "statement respecting the debtor's or an insider's financial condition." However, what qualifies as a "statement respecting the debtor's or an insider's financial condition" remains undefined by the Bankruptcy Code. *Forde v. Campbell (In re Campbell)*, 448 B.R. 876, 885 (Bankr.W.D.Pa.2011). In analyzing whether a representation qualifies as a statement regarding financial condition, courts are split as to the breadth of its meaning.

> The phrase "respecting the debtor's ... financial condition" has a range of potential meanings. Under what many of the courts who have considered this issue refer to as the "broad interpretation," a statement "respecting the debtor's ... financial condition" is any communication that has a bearing on the debtor's financial position. Thus, the broad interpretation posits that a communication addressing the status of a single asset or liability qualifies as "respecting the debtor's ... financial condition."
>
>> Under what courts refer to as the "strict interpretation," a statement "respecting the debtor's ... financial condition" is any communication that presents an overall picture of the debtor's financial position. This interpretation limits statements "respecting the debtor's ... financial condition" to communications that purport

> to state the debtor's overall net worth, overall financial health, or equation of assets and liabilities.

*Id.* (quoting *In re Joelson*, 427 F.3d 700, 705 (10th Cir.2005) (citations omitted)).

This Court in *In re Campbell, supra,* adopted the strict interpretation. In weighing the dual standards, this Court found the analysis set forth in *In re Bandi*, 09-10646, 2010 WL 2801881 (Bankr.E.D.La.2010 July 14, 2010) *subsequently aff'd*, 683 F.3d 671 (5th Cir. 2012) particularly influential, stating:

> [t]his Court agrees with *Bandi* and, thus, likewise chooses, for the reasons set forth in *Bandi,* the strict interpretation of the phrase "respecting the debtor's ... financial condition" so that such phrase pertains to the overall financial condition of the debtor. This Court also chooses the strict interpretation of such phrase because, if one were to do otherwise and instead choose the broad interpretation, then, as a practical matter, every fraudulent statement made by a debtor could conceivably respect such debtor's or an insider's financial condition, thereby rendering § 523(a)(2)(A) a virtual nullity.

*In re Campbell*, 448 B.R. at 886.

In *Campbell*, the Court was asked to determine whether a debtor's fraudulent statements made to a prospective buyer of the debtor's business regarding the status of several business assets, including contracts, existing business relationships, and customer and supplier lists, constituted statements regarding the financial condition of the business, an insider of the debtor. Using the strict interpretation, the *Campbell* court found that since the debtor's fraudulent statements concerned the status of individual assets, and as such assets indirectly affected the debtor's overall financial position, none of the statements qualified as statements regarding financial condition as contemplated by §523(a)(2)(A).

Similarly, the Tenth Circuit Court of Appeals in *In re Joelson, supra*, held that a debtor's fraudulent statements regarding individual assets likewise failed to meet the criteria for being a statement regarding financial condition. In *Joelson*, the plaintiff, Caldwell, based on the debtor's

7

false representations of owning specific assets, namely parcels of property and various antiques, loaned to debtor, Joelson, $50,000.00 in exchange for execution of a promissory note. In determining the dischargeability of Joelson's debt to Caldwell, the court found that Joelson's ownership representations "[did] not constitute a statement as to Joelson's overall financial health analogous to a balance sheet, income statement, statement of changes in financial position, or income and debt statement. Therefore, [Joelson's ownership representations did] not qualify as 'respecting the debtor's … financial condition' under the strict definition of that phrase." *In re Joelson*, 427 F.3d at 714-715.

§523(a)(2)(B)

Under 11 U.S.C. §523(a)(2)(B), a debtor will be denied a discharge of a debt "for money property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . use of a statement in writing. . . (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive. . .".

## DISCUSSION

With the above standards in mind, the Court now turns to whether the debt owed to Plaintiff is nondischargeable under §523(a)(2)(A) and/or (B). The Court will first analyze Plaintiff's claims pursuant to §523(a)(2)(A).

8

§523(a)(2)(A)

As a preliminary matter, Debtor contends that whether or not a false representation was made, Debtor cannot be denied a discharge of the debt owed to Plaintiff as Debtor's statements to Plaintiff concerning ownership of the Oklahoma Property are statements regarding financial condition and therefore excepted under §523(a)(2)(A). This Court disagrees.

As stated above, this Court has previously adopted the strict interpretation of what qualifies as a statement respecting the debtor's or an insider's financial condition. Applying this standard, as well as the relevant case-law, the Court finds that the Debtor's representation of owning the Oklahoma Property, a single asset, failed to present a picture of Debtor's overall financial health and therefore does not constitute a statement regarding financial condition. Thus, Debtor's statements are not excepted under §523(a)(2)(A) and will support a finding of nondischargeability pursuant to said subsection contingent on Plaintiff's ability to prove by a preponderance of the evidence the five elements necessary to demonstrate false representation by Debtor under §523(a)(2)(A), as well as show that the relevant debt was obtained by Debtor's fraud.

It is undisputed that the Debtor falsely represented to Plaintiff that he had inherited the Oklahoma Property and that Debtor's outstanding debt to Plaintiff would be paid from the proceeds of a scheduled, impending sale of said property. Accordingly, the first element required to establish a false representation as actionable under §523(a)(2)(A) is satisfied. In addressing the remaining elements, this Court finds that since Debtor had no ownership rights in any such property, Debtor knew at the time he made his representation that it was untrue as required by the second element.

As for the third element, the Court finds that the circumstances in which the Debtor's representation was made evidence a clear intent by Debtor to deceive Plaintiff into providing further legal services. Specifically, the fact that Debtor made the representation on the final day available to make a partial payment to prevent Plaintiff's withdrawal of representation, along with the Debtor's promise to pay the outstanding balance in full from the proceeds of the sale, and statement that the closing would take place on June 30, 2012, just days after the June 26, 2012 hearing for which he required Plaintiff's presence, all of which Debtor knew to be untrue, demonstrate that Debtor's statements were clearly calculated to deceive Plaintiff as contemplated by §523(a)(2)(A).

At trial Plaintiff credibly testified that she relied on Debtor's statement that he owned property scheduled for sale in Oklahoma in deciding to abandon her intention to file a motion to withdraw representation and instead, provide Debtor with additional legal services. Based on this testimony, the fourth element is satisfied.[5]

Finally, as a result of Debtor's deception, the Court finds that Plaintiff suffered a loss in the form of services rendered to Debtor, as Plaintiff continued to represent Debtor based on his averments. Consequently, Debtor's false representation to Plaintiff that he had inherited the Oklahoma Property for which an impending sale was scheduled supports a finding of nondischargeability of the debt owed to Plaintiff pursuant to 11 U.S.C. §523(a)(2)(A). However,

---

[5] Debtor contends that Plaintiff could have verified Debtor's claims at any point in time prior to rendering additional legal services to Debtor. In making this claim, Debtor seemingly, but not explicitly, alleges that Plaintiff was unjustified in her reliance on Debtor's representations. This Court strongly disagrees with Debtor's contention. In addition to providing a detailed account of why Debtor had not revealed his ownership of the property to Plaintiff prior to June 19, 2012 as set forth in the Findings of Fact, Debtor also contacted an Oklahoma based title company to inquire about a potential closing for the property and then provided the contact information for said title company to Plaintiff as verification of the non-existent closing. The Court finds that due to Debtor's intricateness in crafting support for his claims, Plaintiff was justified in relying on Debtor's representation of owning the Oklahoma Property.

the extent to which the relevant debt is nondischargeable, is determined by the extent to which the debt was "obtained by" the Debtor's false representation to Plaintiff.

Debtor represented to Plaintiff on June 19, 2012 that he owned the Oklahoma Property. Prior to this date, as evidenced by the June 4, 2012 Statement[6], Debtor had already incurred $10,693.22 of the total $11,443.22 in representation fees claimed by Plaintiff. Based on the foregoing case-law, this Court finds that Plaintiff is unable to show that she relied upon Debtor's misrepresentation of property ownership in providing services to Debtor prior to June 19, 2012 due to the fact that said services were provided before the false representation was made. As such, even though Plaintiff has successfully demonstrated that Debtor's misrepresentation of owning the Oklahoma Property gives rise to relief under §523(a)(2)(A), the amount determined nondischargeable is limited to the value of services obtained by Debtor from June 19, 2012 forward. Accordingly, unless Plaintiff can prove the Debtor either made additional misrepresentations which would permit a broader finding of nondischargeability under §523(a)(2)(A), or that Debtor's statements bar discharge under §523(a)(2)(B), the amount determined nondischargeable pursuant to §523(a)(2)(A) is limited to $750.00.

In addition to Debtor's property ownership claims, at trial Plaintiff raised additional allegations of fraudulent statements by Debtor. Specifically, Plaintiff testified that Debtor told Plaintiff that his father was a retired judge in Colorado and that Plaintiff would definitely be paid. Plaintiff stated that due to Debtor's comments, Plaintiff assumed that Debtor could get the money when needed. In her post-trial brief, Plaintiff argues that Debtor's statements created an implied misrepresentation that Debtor's father would pay for Debtor's legal fees. The Court disagrees.

---

[6] The June 4, 2012 Statement was admitted at trial as part of Exhibit "A".

11

This Court has previously observed that "[a]n action under the false pretenses category of § 523(a)(2)(A) addresses implied misrepresentations or omissions by a debtor that foster a false impression. *Tropicana Casino & Resort v. August (In re August),* 448 B.R. 331, 349 (Bankr.E.D.Pa.2011). Among the elements necessary to establish false pretenses for purposes of nondischargeability, the element of intent requires proof by a preponderance of the evidence that the debtor 'knowingly and willingly' promoted an omission or implied misrepresentation. *Id.* at 350. The false pretense must be fostered by design and not result simply from inadvertence. *See Giquinto,* 388 B.R. at 174–75 (citing *Stevens v. Antonious (In re Antonious),* 358 B.R. 172, 182 (Bankr.E.D.Pa.2006))." *In re Crawford*, 476 B.R. at 895 (citations omitted).

In the within matter, although Plaintiff credibly testified that based on Debtor's statements, Plaintiff assumed that Debtor's father would aid Debtor in paying Plaintiff's bill, Plaintiff failed to show by a preponderance of the evidence that Debtor "knowingly and willingly promoted" Plaintiff's assumption. Moreover, assuming arguendo, even if Plaintiff could show that Debtor intended for Plaintiff to infer that Debtor's father would pay Debtor's legal fees, Plaintiff has still failed to provide any evidence that at the time the statements were made, Debtor himself did not believe that his father would assist him monetarily. Thus, Plaintiff is unable to show that the Debtor possessed the requisite intent to defraud under §523(a)(2)(A). Accordingly, Debtor's statements concerning his father's status as a retired judge do not give rise to a finding of nondischargeability under §523(a)(2)(A).

§523(a)(2)(B)

At trial, Plaintiff admitted into evidence a series of email exchanges and written correspondence with Debtor as well as the Judgment Note executed by Debtor in favor of

Plaintiff.[7] Plaintiff avers that based on these writings, the totality of the amount owed to Plaintiff by Debtor, $11,443.22, is nondischargeable under §523(a)(2)(B). After review of the written documents admitted by Plaintiff, the Court finds that Plaintiff failed to meet the applicable burden.

A plain reading of the statute above shows that in order to succeed on a claim of nondischargeability pursuant to §523(a)(2)(B), as a threshold matter, the plaintiff must show that the debtor made a statement in writing that is materially false. Both at trial and in her *Response to Motion to Dismiss*[8], Plaintiff puts particular emphasis on the Judgment Note as evidence supporting nondischargeabiliy pursuant to §523(a)(2)(B). However, in analyzing the document, the Court cannot find any actionable, materially false representation made within the Judgment Note by Debtor. Instead, the Judgment Note acts as a mere acknowledgment of indebtedness to Plaintiff and authorizes an unspecified person(s) to redirect funds belonging to Debtor to the Plaintiff. The Judgment Note contains no assertions of ability to repay. In fact, the Judgment Note does not even contain a promise to repay, which, in itself, is insufficient to establish nondischargeability under §523(a) absent a finding that Debtor never intended to pay Plaintiff. *Giansante & Cobb, LLC v. Singh (In re Singh)*, 433 B.R. 139, 163 (Bankr. E.D. Pa. 2010)(citing *In re Harrison*, 301 B.R. 849, 854 (Bankr.N.D.Ohio.2003)).[9]

As with the Judgment Note, a review of the email exchanges and written correspondence between Plaintiff and Debtor reveals no actionable, materially false statements by Debtor. Debtor makes no positive assertion of ability to pay. On the contrary, Debtor plainly states that

---

[7] Admitted at trial as Exhibits B-F. The Court notes that the same documents were attached to Plaintiff's *Objection to Discharge*.

[8] Based on the Debtor's representations at the Final Pre-Trial Conference held June 4, 2013, this Court is treating Debtor's motion to dismiss, entitled *Rule 12(b)(6) Motion of Defendant Raymond Reed Husman to Dismiss*, as Debtor-Defendant's Answer to Plaintiff's complaint, *Objection to Discharge*.

[9] The Court notes that even if successful, Plaintiff would still only be able to establish as nondischargeable the value of services provided in reliance of this statement; therefore limiting nondischargeability to a total of $750.00, the same amount found nondischargeable pursuant to §523(a)(2)(A) as explained above.

he has no resources available to him which would allow him to make a payment. At most, Debtor's email exchanges with Plaintiff represent promises to repay, which, as explained above, are insufficient to warrant a finding of nondischargeabilty as Plaintiff failed to prove by a preponderance of the evidence that Debtor never intended to pay Plaintiff.

Accordingly, Plaintiff cannot establish that either the Judgment Note or email exchanges support a finding of nondischargeability under 11 U.S.C. §523(a)(2)(B).[10]

## CONCLUSION

For the foregoing reasons, this Court finds that $750.00 of Debtor's $11,443.22 debt to Plaintiff is nondischargeable pursuant to 11 U.S.C. §523(a)(2)(A). Accordingly, Plaintiff's Objection to Discharge is denied in part and granted in part. An appropriate order will be entered.

Dated: September 13, 2013                             /s/ Carlota M. Böhm
                                                      Carlota M. Böhm
                                                      United States Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL TO:**
Karen Hassinger, Esq.
Charles O. Zebley, Jr., Esq.

---

[10] At trial, Defendant argued that the Judgment Note was executed in violation of the Professional Rules of Conduct and, as such, could not be used as a basis for nondischargeability pursuant to §523(a)(2)(B). Since this Court finds that no relief is available to Plaintiff under §523(a)(2)(B) regardless of the Judgment Note's validity, no analysis concerning its enforceability is necessary at this time.